UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBION MOTORS, INC.,

        Plaintiff,                                       Case No. 1:14-cv-857

v.                                                   HON. JANET T. NEFF

CHRYSLER GROUP, LLC,

        Defendant.

_____/

**OPINION**

Pending before the Court in this diversity-breach of contract case is Defendant's Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) (Dkt 24). Plaintiff filed a response (Dkt 28), and Defendant filed a reply (Dkt 26). Having reviewed the parties' written submissions and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons discussed herein, the Court grants Defendant's motion.

**I. BACKGROUND**

Plaintiff Albion Motors, Inc. ("Albion") is a car dealership currently located on North Clark Street in Albion, Michigan in Calhoun County (Dkt 1, Compl. ¶ 1). On October 18, 1996, Albion and Chrysler Corporation, the predecessor to Defendant Chrysler Group, LLC ("CG"), entered into three separate agreements pursuant to which Albion was appointed as an authorized Chrysler, Jeep and Dodge Ram (CJDR) dealer (Dkt 1, Compl. ¶¶ 2, 5 & 7; Dkt 9, Df.'s Exs. B, C & D) (collectively, "the Dealer Agreements"). The Dealer Agreements specify that Albion will have a designated territory within which Albion will be responsible for selling CJDR products:

> DEALER will actively and effectively sell and promote the sale of CC vehicles, vehicle parts and accessories in DEALER's Sales Locality. As used herein, "Sales Locality" shall mean the area designated in writing to DEALER by CC from time to time as the territory of DEALER's responsibility for the sale of CC vehicles . . .

(Dkt 9, Df.'s Exs. B, C & D at § 4). As part of the Dealer Agreements, the parties entered into a Dealership Facilities and Location Addendum ("Location Addendum") (Dkt 29-3, Ex. 2 to Df.'s Memo.). The Location Addendum specifies that Albion may only conduct its CJDR dealership operations from its approved dealership location on Clark Street in Albion, Michigan (*id.*).

The Dealer Agreements also expressly incorporated certain Additional Terms and Provisions ("Additional Terms"), with "the same force and effect" as if set forth in the original Dealer Agreements (Dkt 9, Df.'s Exs. B, C & D, § 5; Dkt 9, Additional Terms, Df.'s Exs. E & F). The Additional Terms govern any potential change of Albion's dealership location, providing:

> DEALER shall not make any change in the location of Dealership Operations or make any change in the area and use of Dealership Facilities without the prior written approval of [CG]. Any written approval of a change in the location or in the area or use of Dealership Facilities shall be valid only if in the form of a new Dealership Facilities and Location Addendum or a separate written agreement signed by DEALER and one of the authorized representatives of [CG] identified in Paragraph 10 hereinabove.

(Df.'s Exs. E & F at § 11(d)(*ii*) (Additional Terms)).

Plaintiff Albion asserts that its dealership in Albion, Michigan is "outdated" and that its current location makes it "impossible" to accede to CG's repeated requests to improve its existing operations (Dkt 1, Compl. at 2, ¶ 7). Albion conducted studies and located two sites in nearby Spring Arbor, Michigan to move its dealership (*id.* at 2, ¶¶ 10-21). According to Albion, both locations are consistent with the required setbacks from other competing dealerships and both locations are within Albion's existing current market area as assigned by CG (*id.* at 2, ¶¶ 14 & 16).

On December 26, 2012, Albion sent CG correspondence seeking permission to relocate its dealership to the first Proposed Location in Spring Arbor (Dkt 1-2, Ex. 1 to Compl.). Albion delineated the following four reasons for its request: (1) "[b]usiness conditions in Albion, Michigan continue to decline," (2) re-locating to Spring Arbor "will give us better access to our existing customer base and future customers," (3) re-locating to Spring Arbor "will allow us to reach our annual MSR," and (4) re-locating to Spring Arbor will allow Albion to build a "state-of-the-art facility" (*id.*).

On February 27, 2013, CG declined Albion's request, explaining that (1) "[t]hat market is already assigned to another dealer," (2) "there is no significant commercial activity in the immediate area and no competitive dealers within 4 miles of the proposed site to drive consumer traffic," and (3) the relocation would "negatively impact sales opportunity and customer convenience in the western portion of your Sales Locality" (Dkt 1-3, Ex. 2 to Compl.). CG encouraged the dealer to explore relocation sites in the town of Albion for a new facility (*id.*).

On March 13, 2013, Albion sent CG correspondence further describing "the economic situation of Albion, MI" and seeking permission to relocate the dealership to a Second Proposed Location in Spring Arbor (Dkt 1-4, Ex. 3 to Compl.). On May 3, 2013, CG declined Albion's relocation request, citing the same reasons it previously delineated as well as declining population trends in Spring Arbor (Dkt 1-5, Ex. 4 to Compl.). Albion claims that the re-location request process has been "[r]iddled in politics and favoritism," and that CG's rejection of both locations submitted by Albion caused it to incur losses and damages (Dkt 1, Compl. at 2, ¶ 22).

On August 12, 2014, Albion filed a four-count Complaint suit against CG. In Count I ("Breach of Contract"), Albion alleges that each of the four reasons CG provided for rejecting

3

Albion's Second Proposed Location are "baseless and unsupported" (Dkt 1, Compl. ¶ 29).

In Count II ("Injunction"), Albion requests a "mandatory injunction ... forcing the Defendant to approve the Plaintiff's Proposed Location and the Plaintiff's Second Proposed Location" (*id.* ¶ 44). In Count III ("Defendant's Violation of the Michigan Dealer Act"), Albion alleges that CG's failure to approve Albion's relocation request to the Proposed Location and the Second Proposed Location is a breach of the good faith requirement under Michigan's Dealer Act, MICH. COMP. LAWS § 445.1574 (*id.* ¶¶ 46, 52-55). Albion requests this Court order CG to approve the Proposed Location and the Second Proposed Location and award Albion its damages, attorney fees and costs (*id.* ¶¶ 56-57). Last, in Count IV, Albion alleges that CG's reasons for declining its request to relocate to either location are "pretextual and contrived" (*id.* ¶ 69). Albion requests a declaratory ruling that CG violated the Dealer Act and breached the Dealer Agreement and that CG is liable to Albion for its resulting damages, costs and attorney fees (*id.* ¶ 71). CG did not file an Answer to the Complaint, instead filing the instant motion to dismiss (Dkt 24), which is ripe for decision.

## II.  DISCUSSION

### A.  Motion Standard

In deciding whether to dismiss a claim under Rule 12(b)(6), a court must accept the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In addition to the allegations and exhibits of the complaint, a court may consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

To survive dismissal, the complaint must contain enough facts to establish a "plausible," as opposed to merely a "possible," entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

The parties do not dispute that Michigan law applies to the issues presented in this diversity case. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding that a federal court sitting in diversity is bound to follow the law of the forum state); *Hardy v. Reynolds & Reynolds Co.*, 311 F. App'x 759, 761 (6th Cir. 2009) (discussing choice of law rules in a diversity case). On questions of state law, this Court is bound by the rulings of the state supreme court. *In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014). When there is no state law construing a state statute, however, a federal court must predict how the state's highest court would interpret the statute. *Id.* "If the state's highest court has not yet addressed the issue presented, we must predict how the court would rule by looking to all available data, including decisions of the states' appellate courts." *Id.* Last, "[w]hile not binding, this Court may turn to decisions of its sister circuits and lower federal courts interpreting state law for guidance." *Id.*

### B. Analysis

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant CG moves to dismiss Plaintiff Albion's Complaint in its entirety, contending that Albion has failed to state any claim upon which relief can be granted. In responding to CG's motion, Albion indicates that, upon review, it is willing to voluntarily dismiss Count III (Dkt 28 at 28). Further, the Court determines, and the duplicative analyses in the parties' briefing reinforces its determination, that Albion's

Counts II and IV, seeking injunctive and declaratory relief, are dependent on the success of its breach of contract claim in Count I. Therefore, the Court's analysis of CG's motion to dismiss necessarily focuses on Albion's allegations in Count I.

In Count I, Albion alleges that each of the four reasons CG provided for rejecting Albion's Second Proposed Location are "baseless and unsupported" (Dkt 1, Compl. ¶ 29). Albion alleges that CG failed to act in good faith in declining its request to relocate (*id.* ¶ 36). Albion alleges that CG's failure to act in good faith is a breach of CG's obligations under the Dealer Agreement that proximately caused Albion to suffer damages including, but not limited to, lost sales and servicing of vehicles (*id.* ¶ 37). Albion requests this Court order CG to approve the Proposed Location and the Second Proposed Location (*id.*).

CG argues that Count I should be dismissed because CG has no obligation under the Dealer Agreements to approve any relocation request, let alone a request to move a dealership more than 10 miles from the approved location (Dkt 25 at 6, 12-13). Specifically, CG argues that because the only relocation term of the Dealer Agreements is that Albion may not relocate without CG's prior written approval, CG, as a matter of law, has "absolute discretion" to deny Albion's relocation requests, for any or no reason (*id.* at 5-6). CG argues that to the extent Count I is predicated on an implied contractual duty, Count I also fails as a matter of law because the implied covenant of good faith and fair dealing does not apply where, as in this case, the parties have unmistakably expressed their rights (*id.* at 13-15, citing *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 876 (5th Cir. 1989) (applying Michigan law); *Thoroughbred Ford, Inc. v. Ford Motor Co.*, 908 S.W.2d 719, 733 (Mo. App. Ct. 1995) (same)).

In response, Albion does not dispute that the Dealer Agreements provide that Albion must submit its request for relocation to CG; however, Albion emphasizes that their Agreement, unlike others, does not contain language providing CG with "sole discretion" or "exclusive judgment" to deny Albion's request (Dkt 28 at 16-20, citing *Parlovecchio Bldg., Inc. v. Charter Cnty. of Wayne Bldg. Auth.*, No. 313257, 2014 WL 631264, at *1 (Mich. Ct. App. Feb. 13, 2014) (examining contractual language that the "Owner may terminate the contract whenever he/she determines in his/her sole discretion that such termination is in the best interest of the Owner"); *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 827 (6th Cir. 2003) (examining contractual language that the "Company retains the right in its exclusive judgment to approve or disapprove such a transfer")). Albion argues that, in contrast, the manner of performance in this case was "left open," triggering the implied covenant of good faith and fair dealing (*id.* at 16-17). Last, according to Albion, CG's reasons for rejecting its relocation requests are "contrived, not justified and not in good faith" (*id.* at 21-26). Albion asserts that its factual allegations about Spring Arbor and the soundness of its proposal to relocate to either of the proposed locations in Spring Arbor must instead be "accepted as true" (*id.* at 22-25).

In reply, CG argues that there is no "magic language" required to establish CG's rights, that the *Hubbard* and *Thoroughbred* courts correctly held that the type of language in the parties' Dealer Agreements at § 11(d)(*ii*) unambiguously reserves the right of relocation approval to CG (Dkt 26 at 8-9).

CG's argument for dismissal has merit.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to

7

the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014). The parties do not disagree that § 11(d)(*ii*) of the Additional Terms incorporated into their Dealer Agreements governs any potential change of Albion's dealership location. There, the parties agreed that Albion "shall not make any change in the location of Dealership Operations ... without the prior written approval of [CG]" (Df.'s Exs. E & F at § 11(d)(*ii*)). Albion asserts that this language "left open" the manner of performance, triggering an implied covenant of good faith and fair dealing.

The parties agree that Michigan common law recognizes an implied covenant of good faith and fair dealing that applies to the performance and enforcement of contracts. *See Ferrell v. Vic Tanny Int'l, Inc.*, 357 N.W.2d 669, 672 (Mich. Ct. App. 1984); *Burkhardt v. City Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (Mich. Ct. App. 1975). Michigan courts rely on an implied good faith covenant "[w]here a party to a contract makes the manner of its performance a matter of its own discretion...." *Burkhardt*, 226 N.W.2d at 680; *see also Ferrell*, 357 N.W.2d at 672. However, "when the parties have 'unmistakably expressed their respective rights' ..., the covenant does not adhere." *Stephenson*, 328 F.3d at 827 (quoting *Hubbard*, 873 F.2d at 877); *see also Burkhardt*, 226 N.W.2d at 680. "The obligation of good faith cannot be employed, in interpreting a contract, to override express contract terms." *Parlovecchio*, 2014 WL 631264, at *4 (quoting *Cook v. Little Caesar Enters., Inc.*, 210 F.3d 653, 657 (6th Cir. 2000) (applying Michigan law)).

Defendant directs the Court's attention to two cases applying Michigan law to facts similar to those at bar. As it may, *see Darvocet, supra*, the Court looks to these cases for guidance. First, in *Hubbard Chevrolet*, a dealership relocation dispute, the following contractual language was at issue: "No change in Dealership Location ... will be made without the written approval of General

8

Motors." 873 F.2d at 877. The Court of Appeals for the Fifth Circuit, applying Michigan law, reached the conclusion that the language did not contain an implied covenant of good faith and fair dealing. The Fifth Circuit reasoned the following:

> [T]his contract language leaves no room for a court or jury to supply limits. These clauses ... specify Hubbard's location at Utica and flatly preclude relocation absent GM's approval .... The contract does not limit the reasons upon which GM can base its relocation decisions. *See Lichnovsky v. Ziebart Int'l Corp.*, 414 Mich. 228, 324 N.W.2d 732, 736-37 (1982). Hubbard and GM have deferred no decisions regarding relocation or the relevant factors. They gave GM the authority to approve or disapprove relocation for its own reasons, and thus set out the limits of what the contract requires of these parties.
>
> Hubbard agreed to operate at the specified location and to request relocation in writing. It can point to no portion of this contract creating "reasonable expectations" that GM would grant such requests.

*Id.* at 878. The Fifth Circuit concluded that "[s]ubstituting this jury's sense of what GM should have done for what the contract expressly allowed GM to do represents a veto of contractual language." *Id.*

In *Thoroughbred Ford*, also a dealership relocation dispute, the contractual language at issue provided the following: the dealer "shall not move or substantially modify or change the usage of any of the DEALERSHIP LOCATION or FACILITIES ... without the prior written consent of the Company." 908 S.W.2d at 733. The Missouri court of appeals, applying Michigan law, similarly reached the conclusion that the parties' contractual language did not contain an implied covenant of good faith and fair dealing. The state appellate court determined that "as in *Hubbard,* the parties' contract specifies Thoroughbred's location and flatly prohibits relocation absent Ford's approval." *Id.* According to the court, the dealer "gave Ford the discretion to approve or disapprove any proposed relocation for its own reasons, defining the limits of what the contract required of the

9

parties." *Id.* The Court therefore "refuse[d] to imply a covenant of good faith and fair dealing to override or contradict such express terms of the contract." *Id.*

Here, too, in applying Michigan law to the contractual provisions in this case, the Court concludes that the parties set forth the limits of what the contract requires of them. Specifically, the plain language of § 11(d)(*ii*) unambiguously and flatly precludes relocation absent CG's approval. The provision does not contain an implied covenant of good faith and fair dealing. Rather, like the parties in *Hubbard Chevrolet* and *Thoroughbred Ford*, CG and Albion agreed to give CG an unlimited right to approve or disapprove relocation.

While Albion emphasizes that § 11(d)(*ii*) does not include language expressly granting CG the "sole discretion" or "exclusive judgment" to deny Albion's relocation request (Dkt 28 at 19-20), their contract presumed no discretion, and thereby removed any basis upon which to imply a covenant of good faith and fair dealing. *See, e.g., Stephenson*, 328 F.3d at 827 ("Because any decision concerning the transfer of accounts between agents rested exclusively with Allstate, the contract presumed no discretion and, thereby, removed any basis upon which to imply a covenant of good faith and fair dealing.") (citing *Cook*, 210 F.3d at 657; *Hubbard*, 873 F.2d at 877; *Lytle v. Malady*, 579 N.W.2d 906, 911-13 (Mich. 1998) (specific reservation of the right to terminate employees placed in handbook given to all new hires extinguished any implied "proper cause" standard for termination); *Burkhardt*, 226 N.W.2d at 680 ("Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith.")). Hence, the Court agrees with CG that there is no basis for Albion's claim that CG breached the Dealer Agreements by denying Albion's requests to relocate to Spring Arbor.

Albion fails to state a breach-of-contract claim, and dismissal of Count I is therefore warranted. The Court will also dismiss Count II inasmuch as Albion cannot show, in pertinent part, a likelihood of success on the merits warranting injunctive relief. *See generally Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (describing the standard for obtaining injunctive relief). Dismissal of Count IV is likewise warranted inasmuch as Albion seeks a declaratory remedy for its fatally defective breach of contract claim.

### III. CONCLUSION

For the foregoing reasons, the Court grants Defendant CG's Motion to Dismiss (Dkt 24). An Order consistent with this Opinion will enter. Further, because this Order resolves all pending claims, a corresponding Judgment will also enter.

DATED: July 7, 2015               /s/ Janet T. Neff
                                  JANET T. NEFF
                                  United States District Judge